Gregory David FERGUSON, Appellant,

v.

UNITED STATES, Appellee.

No. 06–CF–1101.

District of Columbia Court of Appeals.

Argued March 20, 2008.

Decided April 3, 2008.*

Richard S. Stolker, Rockville, MD, appointed by this court, for appellant.

John V. Geise, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, Roy W. McLeese III, Thomas J. Tourish, Jr., and Shana L. Fulton, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and BLACKBURNE–RIGSBY, Associate Judges, and KERN, Senior Judge.

* The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published at the request of the appellee.

PER CURIAM.

This is an appeal from a judgment of conviction the trial court entered after a bench trial based upon its finding appellant guilty of possessing the drugs of ecstasy and marijuana, both in violation of D.C.Code § 48–904.01(d) (2001).

## I.

The record reflects that a police officer on duty in the Southeast quadrant of Washington, D.C., around two o'clock in the morning of April 6, 2006, observed appellant driving an automobile bearing a Maryland license tag only on the rear of the vehicle which the officer knew to be a violation of that state's law.[1] Appellant soon turned his vehicle off the street and onto the parking lot of a three-story condominium complex at 33rd and D Streets, Southeast. The officer noted that the automobile which had been driving ahead of appellant when the officer first observed him also had turned onto this parking lot, preceding appellant. The officer estimated that this lot contained about twenty parked automobiles. The officer observed no one else in the lot at this time.

After running a computer check and learning that the license tag had expired in July of 2005, the officer advised appellant that he was under arrest for failure to have the car he was driving properly registered and ordered him to remain in his car. Appellant became agitated and sought to push open its front door while at the same time explaining why he was driving this car. The officer kept appellant in the car until other officers arrived on the scene, at which point appellant was handcuffed, removed from the car, searched at the scene, and then transported to the

police station. In the meantime, the driver whom appellant followed onto the parking lot had left the scene.

The police search revealed that appellant had a ziplock bag of so-called ecstasy pills in the coin pocket of his jeans and a bulge under the buckle of the belt in his pants which the officer observed was a ziplock "baggie" containing fourteen small bags of greenish weed they recognized as marijuana. Appellant himself explained that this was only "a little weed." The officers in their search of appellant had unbuckled his belt and undone the top button of his pants to remove the large "baggie" which was the bulge they had observed and had been held in place by his belt and the band of his undershorts. Then, the driver of the automobile appellant had followed onto the parking lot (who was later identified as appellant's close friend whom he deemed a "brother") and appellant's mother came onto the scene. These two testified at the subsequent trial that appellant's trousers had been pulled all the way down from his body, as well as his undershorts. However, the officers testified that the obvious bulge in the front of his jeans warranted a search and necessitated ultimately a removal from his jeans and underwear. They testified that neither his pants nor his underwear had been pulled down to his ankles. The police transferred appellant to the police station where they found a bag of greenish leaves in the pocket of his pants which the officers recognized as marijuana.

Thereafter, appellant moved to suppress as evidence the marijuana and ecstasy. The trial court, with the approval of counsel, conducted both a hearing on his motion to suppress the drugs and a trial of the criminal charge that he had possessed

---

1. The officer observed that the license tag on the back of the car did not have the required information as to the date of expiration and hence should have been on the front of the car.

illicit drugs. The court admitted into evidence a DEA chemist's report, concluding that the bag of pills and greenish weed found on his person were illicit drugs.

## II.

Appellant vigorously advances two contentions: first, that the search on the parking lot at two o'clock in the morning constituted a search in violation of the Fourth Amendment; and second, that the admission into evidence at the trial of the DEA chemist's report without requiring the chemist to be present and to testify constituted a violation of his constitutional right under the Sixth Amendment to confront his accuser. Specifically, appellant argues that "the search of appellant's groin area in a public place and in the presence of his family members was objectively unreasonable and violated his Fourth Amendment rights," and that the Sixth Amendment was violated by the trial court "admitting the DEA chemist's report without an opportunity for confrontation and cross-examination."

■ We note that the trial of appellant occurred in August 2006, and that in December 2006, this court issued its decision in *Thomas v. United States,* 914 A.2d 1 (D.C.2006), *cert. denied,* —— U.S. ——, 128 S.Ct. 241, 169 L.Ed.2d 160 (2007), holding that the prosecution is barred from using at trial a DEA chemist's written expert testimony without the chemist appearing and testifying in person. We determined in *Thomas* that the plain error standard of review governs when a defendant did not raise a Confrontation Clause objection at trial.[2] 914 A.2d at 8. However, the error was not "plain" post-*Crawford*[3] and pre-

*Thomas* and does not fit the "special plain error" exception set forth in *Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). *See Otts v. United States,* Nos. 04–CF–1139 & 06–CO–1040, 2007 WL 5123819, at **6–7 (D.C. 2008). Thus, appellant must show the error "affected his 'substantial rights' because there was a reasonable probability that the Confrontation Clause violation had a prejudicial effect on the outcome of his trial." *Id.* at ——, 2007 WL 5123819 at *2 (citing *Thomas,* 914 A.2d at 21).

We note in particular that here, as in *Thomas,* appellant has never disputed the accuracy of the chemist's report. *See Thomas,* 914 A.2d at 13. As in *Thomas,* the fairness of the proceeding is not jeopardized because appellant was provided with copies of the DEA–7, including the chemist's worksheets, prior to trial, was warned that it would be offered as evidence against him, had a full and fair opportunity to investigate and challenge the report, and he could have subpoenaed and cross-examined the chemist yet chose not to. *Id.* at 22. Moreover, the integrity of the proceeding is not jeopardized because appellant never disputed the accuracy of the chemist's report and "there is no reason whatsoever to believe that the chemist's report was unreliable." *Id.* The integrity and accuracy of the report was corroborated by the fact that appellant himself referred to the green leafy materials taken from the ziplock bag on his person as "weed," a street term for marijuana. The officers also referred to the green leafy material as marijuana. The officer at the scene of the arrest who seized the "zip-top bag" from appellant's coin pocket

2. Even if we construe the concerns about certification that appellant raised at trial as preserving a hearsay issue, that would not be sufficient to present a Confrontation Clause

objection. *Marquez v. United States,* 903 A.2d 815, 817 (D.C.2006).

3. *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

described with specificity the seven orange tablets with a chili pepper emblem, the two green tablets with a superman emblem, and the two pink tablets with an anchor emblem. The officer explained that the tablets "were consistent with what I've seen in my police experience as MDMA or ecstasy." Finally, as in *Thomas*, it is unclear how the public reputation of the proceeding would be prejudiced by the admission of the DEA–7. *See id.* Therefore, although the DEA chemist did not appear at the trial, we are not persuaded under the particular circumstances here that there was "a reasonable probability that the violation of the Confrontation Clause here had a prejudicial effect on the outcome of his trial."[4] *Thomas, supra,* 914 A.2d at 21 (citation omitted).

We now address appellant's contention that the police, upon his arrest, conducted a search so intrusive that it amounted to a search violative of the Fourth Amendment. First, we note that the arrest and incidental search occurred at two o'clock in the morning on a private parking lot which contained some twenty or more *parked* cars, but no persons were on this lot. Moreover, the uncontradicted testimony was that the only persons who came on the lot at this time were the police, appellant, his brother, and his mother. Next, there was no evidence that either member of his family witnessed the police search; rather, the evidence was that they only saw him after the search was completed. Also, we note that the police conducted their search of his trousers because they saw the bulge and had to make certain that this was not a weapon for their own safety. Finally, we note the uncontradicted testimony that the police promptly transported appellant to the police station rather than parading him be-

fore his mother and brother and out of the parking lot onto the street.

Although the trial court did not resolve the fairly dramatic factual disputes about what happened, we need not remand for further fact-finding. Appellant acknowledges that this issue does not affect the admissibility of the ecstasy tablets. Moreover, even if we assume, solely for the sake of argument, that the search was illegal, a separate quantity of marijuana was found in appellant's pants pocket during a subsequent search at the station. That bag of marijuana was not in any sense "fruit of the poisonous tree," *see Wong Sun v. United States,* 371 U.S. 471, 484–87, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and there would be no justification for suppressing it. Furthermore, even that smaller quantity of marijuana amply supported the conviction for possession of marijuana. We, therefore, are satisfied that any error in admitting the marijuana recovered from appellant's underwear was harmless beyond a reasonable doubt.

Accordingly, the judgment of conviction is affirmed.

---

4. We note also that the trial court carefully reviewed the weight of the seized drugs to ensure that the drugs seized were measurable.